UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD BOBRIK,

        Plaintiff,

    v.

NORTHWEST CENTER FOR THE RETARDED,

        Defendant.

CASE NO. C03-3322JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment from Plaintiff Richard Bobrik and Defendant Northwest Center for the Retarded ("NWCR"). (Dkt. ## 39, 51). Neither party has requested oral argument, and the court finds the motions suitable for disposition based on the briefing, declarations, and exhibits that each party provided. For the reasons stated below, the court GRANTS NWCR's motion for summary judgment (Dkt. # 39), DENIES Mr. Bobrik's cross-motion (Dkt. # 51), and directs the clerk to enter judgment for NWCR.

## II. BACKGROUND

Defendant NWCR is a charitable organization dedicated to finding vocational opportunities for individuals with disabilities. Among other activities in furtherance of that mission, NWCR endeavors to employ individuals with disabilities at NWCR

ORDER – 1

facilities. To raise funds for its programs, NWCR operates donation centers to receive donations of household goods from the Seattle community.

Mr. Bobrik began working at an NWCR donation center in 2000. He suffers from a condition that limits the mobility in his back and legs. The disability does not permit him to lift heavy objects. Aware of that limitation, NWCR consistently exempted Mr. Bobrik from lifting items over 10 pounds, and generally ensured that his job required only light duty work. Mr. Bobrik does not dispute that NWCR initially accommodated his disability. For example, Mr. Bobrik worked on the second floor of the building housing the donation center. He had difficulty ascending the outside staircase that most employees used. NWCR gave him access via keypad to the first floor so that he could use an indoor elevator.

In 2003, a series of disputes arose between Mr. Bobrik and NWCR. In January 2003, a new tenant moved into the building housing the donation center. The new tenant replaced the first floor keypad access with a lock and key. For security reasons, the new tenant would not provide keys to NWCR employees, but Mr. Bobrik was still permitted to use the door to access the elevator. Mr. Bobrik complained that the door was sometimes not unlocked by the start of his shift at 7:00 a.m. NWCR responded by taking measures to help ensure that the door would be open by 7:00 a.m. Mr. Bobrik's supervisor, Randy Stockton, began propping the door open himself to ensure Mr. Bobrik had access. In addition, NWCR assured Mr. Bobrik that he would not be considered tardy if he was late to work because he could not access the first floor door. There is no indication that Mr. Bobrik was ever forced to use the stairs. There is no indication that he was ever subject to adverse treatment as a result of his need to use the elevator. By late February 2003, NWCR announced a reorganization of its donation center staffing that changed shift starting times for employees in Mr. Bobrik's position to 8:00 a.m. Mr. Bobrik's issues regarding the first floor door became moot as a result of the change.

ORDER – 2

In early February 2003, Mr. Bobrik suffered an unspecified injury to his back while working. On February 13, 2003, Mr. Bobrik visited Dr. Daniel Chilczuk, who recommended two weeks of light duty work. Mr. Bobrik did not request additional accommodation from NWCR as a result of this recommendation.

On February 21, 2003, NWCR announced a reorganization of its donation center workforce. The reorganization had the effect of placing the burden of loading and unloading vans on employees in Mr. Bobrik's position. At the meeting announcing the reorganization, Mr. Bobrik immediately began to complain that he could not fulfill the new duties. Mr. Stockton and another supervisor, Jack Campbell, asked Mr. Bobrik if he would discuss his limitations after the meeting. Mr. Bobrik declined to speak to either of them. On February 27, 2003, Mr. Campbell and Mr. Stockton approached Mr. Bobrik, provided him with a job description of his restructured position, and asked him to have a doctor address which duties he could not perform.

On the same day, Mr. Bobrik met with Dr. Chilczuk again. Based on Mr. Bobrik's representation that NWCR would require him to "work full time, regular duties, which involve[] bending and lifting," he recommended four weeks off work. Bobrik Ex. 7. Mr. Bobrik stopped coming to work after meeting with Dr. Chilczuk, but did not inform NWCR that he would be taking leave. In response to a contact from Dr. Chilczuk, an NWCR human resources employee telephoned Mr. Bobrik on March 3, 2003. He stated that he could perform light duty work. The employee contacted Dr. Chilczuk to have him confirm Mr. Bobrik's eligibility for light duty work. Dr. Chilczuk responded that Mr. Bobrik would be ready for light duty work by approximately March 13, 2003. In the meantime, NWCR employees contacted Mr. Bobrik to schedule a meeting to discuss possible accommodations for Mr. Bobrik under the reorganization plan. Mr. Bobrik attended a meeting with John Schindler (who supervised Mr. Stockton), Mr. Stockton, and Jean Kantu, another supervisor. Mr. Bobrik admits to being

ORDER – 3

uncooperative during the meeting, admits that he made serious insults to Mr. Schindler, and admits that he threatened to leave.  Mr. Schindler told Mr. Bobrik that his leaving would be construed as a resignation.  Mr. Bobrik left.  NWCR terminated his employment.

Mr. Bobrik sued NWCR for failure to accommodate his disability under Washington law, for non-compliance with the federal Family and Medical Leave Act ("FMLA"), and for retaliatory discharge under Washington law.  NWCR seeks summary judgment on all of Mr. Bobrik's claims.

### III.  ANALYSIS

In examining these cross-motions, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  Where a question presented is purely legal, summary judgment is appropriate without deference to the non-moving party.

**A.    NWCR Provided Reasonable Disability Accommodations to Mr. Bobrik.**

The court turns first to Mr. Bobrik's claims that NWCR failed to accommodate his disability.  Washington law provides persons with a disability the right to accommodation.  RCW §§ 49.60.030(c), 48.60.180(2).  Washington courts have

ORDER – 4

construed the statute to impose a duty on employers to "reasonably accommodate" a person with a disability who is qualified to perform the "essential functions" of a job, and who provides his employer with notice of his disability and accompanying limitations. Davis v. Microsoft Corp., 70 P.3d 126, 131 (Wash. 2003).

Mr. Bobrik's case founders because he has no evidence that NWCR failed to reasonably accommodate him. The parties agree that Mr. Bobrik suffered from a disability and provided notice to NWCR. Their disputes focus on the reasonableness of NWCR's accommodation. An employer's duty to accommodate extends only to "removing sensory, mental or physical impediments to the employee's ability to perform his or her job." Doe v. Boeing Co., 846 P.2d 531, 538 (Wash. 1993). Provided that it satisfies this duty, an employer has no obligation to provide an employee with the specific accommodation he has requested. Snyder v. Medical Serv. Corp., 988 P.2d 1023, 1030 (Wash. Ct. App. 1999).

As to Mr. Bobrik's difficulty using the stairs to access his second floor workspace, there is no dispute that NWCR provided reasonable accommodation. NWCR never required him to use the stairs, made every effort to provide him with access to the first floor elevator, and assured him that if he was tardy as a result of delays in accessing the first floor elevator, there would be no negative repercussions. The court finds these undisputed actions to be reasonable as a matter of law. Although NWCR did not provide Mr. Bobrik with the precise accommodation he requested (a key to access the first floor), it undisputedly removed all impediments that the staircase to the second floor imposed on Mr. Bobrik.

As to Mr. Bobrik's general requests for light duty accommodations, including requests he made in light of the February 2003 NWCR reorganization, the court finds no disputed facts sufficient to carry this claim to a jury. There is no dispute that before the reorganization, NWCR consistently provided light duty accommodations for Mr. Bobrik.

ORDER – 5

Mr. Bobrik does not contest that these accommodations allowed him to work. After the reorganization, it is likely that Mr. Bobrik needed additional accommodation. It is undisputed, however, that NWCR began the process of accommodating him. NWCR never forced Mr. Bobrik to perform the additional lifting that his post-reorganization position would require. Instead, NWCR requested that Mr. Bobrik's doctor identify the functions listed in his job description that Mr. Bobrik would be unable to perform. Mr. Bobrik was terminated, however, before NWCR could implement any accommodations. Indeed, Mr. Bobrik's behavior ensured that his termination came before NWCR could even have a discussion with him about new accommodations. Under these circumstances, Mr. Bobrik has no claim for failure to accommodate his disability.

**B.    NWCR Did Not Violate Mr. Bobrik's FMLA Rights.**

Mr. Bobrik contends that NWCR violated the FMLA when it forced him to work during a medically necessary leave of absence. Although it is not clear from Mr. Bobrik's papers, he may also be claiming that his termination violated the FMLA. To succeed on an FMLA claim, a plaintiff must show that he took an FMLA-protected leave and that he suffered an adverse employment action as a result. Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1124-25 (9th Cir. 2001).

Mr. Bobrik has no evidence that he suffered an adverse employment action as a result of his FMLA leave. The court assumes for the purpose of these motions that the four-week leave (and subsequent modifications thereto) that Dr. Chilczuk recommended qualified as FMLA-protected leave.[1] NWCR's insistence that Mr. Bobrik attend a meeting at NWCR to discuss accommodations of his disability was not an adverse employment action. At that point, NWCR had received clarifying information from Dr. Chilczuk that established definitively that Mr. Bobrik's condition would not prevent him

---

[1] NWCR's argument that Mr. Bobrik's failure to provide proper notice of his leave precludes FMLA protection may have merit, but the court need not reach the issue.

ORDER – 6

from coming to work for a meeting. Mr. Bobrik admits that he was capable of attending. As to his termination at the conclusion of that meeting, the court finds no evidence supporting the notion that Mr. Bobrik's FMLA leave motivated NWCR's decision. NWCR's stated reason for the termination is Mr. Bobrik's refusal to participate in a discussion of accommodating his disability in the wake of the NWCR reorganization leading up to and including the March 10, 2003 meeting. The court has reviewed Mr. Bobrik's deposition testimony regarding the meeting and finds that Mr. Bobrik's own admissions establish that NWCR had ample basis to terminate him. Mr. Bobrik called Mr. Schindler a "bigot" and told him he would "do well as some commandant in a Nazi concentration camp." Bobrik Dep. at 250. Mr. Bobrik walked out of the meeting without ever discussing his need for additional disability accommodation. Neither the FMLA nor Washington law prohibits an employer from terminating an employee who verbally assaults other employees, or who walks out of a meeting in violation of a supervisor's request that he remain, or who refuses to participate in the process of developing reasonable disability accommodations. The court also finds no evidence that NWCR's stated reasons for terminating Mr. Bobrik were pretextual. NWCR's uninterrupted history of accommodating Mr. Bobrik's disability is more than sufficient to overcome any claim of pretext.

**C.     Mr. Bobrik Has Not Provided Evidence to Sustain His Retaliation Claim.**

Mr. Bobrik's retaliation claim fails for the same reasons as his FMLA claim. Under Washington law, a plaintiff claiming retaliation must show that he engaged in a protected activity, that he suffered an adverse employment action, and that retaliation was a "substantial factor" in the adverse employment action. Washington v. Boeing Co., 19 P.3d 1041, 1049 (Wash. Ct. App. 2000). The court assumes that Mr. Bobrik's taking FMLA leave and his petitioning for disability accommodation are protected activities. The court also notes that there is evidence that Mr. Bobrik had notified the Seattle Office

ORDER – 7

for Civil Rights ("OCR") of his complaints against NWCR, or that at least he had notified NWCR that he intended to file a complaint with OCR. This is also a protected activity. There is no dispute that Mr. Bobrik's termination was an adverse employment action. As discussed above, however, NWCR has stated several legitimate bases for terminating Mr. Bobrik, none of which are related to his protected activities. Mr. Bobrik has the burden to come forward with evidence that NWCR's stated reasons are merely pretextual, and he has not done so. The court thus grants summary judgment on Mr. Bobrik's retaliation claim.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS NWCR's motion for summary judgment (Dkt. # 39) and DENIES Mr. Bobrik's cross motion (Dkt. # 51). The court directs the clerk to enter judgment for NWCR.

Dated this 22nd day of July, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 8